United States Court of Appeals,

Fifth Circuit.

No. 93-7309.

Maureen HILTGEN, Individually and as Parent and Natural Guardian of Nicole Hiltgen and Molly Hiltgen, minor children and as Personal Representative of Peter J. Hiltgen, Deceased, Plaintiff-Appellee-Cross-Appellant,

v.

Douglas Leon SUMRALL, et al., Defendants-Appellants-Cross-Appellees.

Oct. 27, 1994.

Appeals from the United States District Court for the Southern District of Mississippi.

Before REYNALDO G. GARZA, DeMOSS and PARKER[1], Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

Maureen Hiltgen filed this diversity wrongful death action against Douglas Leon Sumrall ("Sumrall"), The Mason & Dixon Lines ("Mason"), and D. Larry Abston ("Abston"), asserting negligence and vicarious liability for an automobile accident that caused the death of her husband, Peter J. Hiltgen, on March 6, 1989. After a trial by jury, the district judge entered judgment on the verdict against all of the defendants, jointly and severally, in favor of the plaintiff on March 5, 1992.

The defendants' post-trial motions were ultimately denied, and this appeal followed. The plaintiff filed a cross-appeal as well, which was contingent only. Since we find no merit in the

---

[1] Judge Parker participated by designation in the oral argument of this case as a United States District Judge for the Eastern District of Texas. Since that time he has been appointed as a Fifth Circuit Judge.

1

defendants' appeals, we do not address the points of error raised by the plaintiff.

FACTS

The accident from which this case arose occurred on March 6, 1989 at approximately 10:00 p.m. on Interstate 20 near Leeds, Alabama. Peter Hiltgen was killed instantly when his van slammed into the rear of a tractor-trailer rig driven by Sumrall. Sumrall is a Mississippi resident who was employed by Abston. Abston, also a Mississippi resident, owned the tractor-trailer, which had been leased to Mason for the purpose of carrying a load of plastic pipe from Quitman, Mississippi to Woodstock, Georgia. Mason is a Delaware Corporation with its principal place of business in Tennessee, and an agent in Meridian, Mississippi.

Prior to 10:00 p.m. on March 6, 1989, Sumrall pulled the tractor-trailer into the emergency lane or shoulder on the right-hand side of I-20 East, just outside Leeds, Alabama, near the 144 mile marker. Sumrall testified later that the purpose of this stop was to check his load and urinate. The evidence shows that when Sumrall was prepared to continue his haul to Woodstock, Georgia, he started to accelerate in the emergency lane and slowly brought the tractor-trailer back into the right-hand lane of traffic. The evidence also shows that the tractor-trailer was travelling approximately 25-30 miles per hour at the time of the collision.

Approximately seven miles west of the collision, Franklin Howard and Gordon Simpson, travelling in the same vehicle, had

2

entered traffic on I-20 right behind the van driven by Peter Hiltgen. They testified that the van was not being driven in a reckless manner when they were in a position to observe it prior to the accident. Fifteen to twenty seconds before the collision, the Hiltgen van completed a safe pass of a vehicle driven by Britt Smith. Mr. Smith testified that the van was operating with only one headlight, but that it was being operated in a safe manner in all other respects. The evidence indicates that the Hiltgen van was travelling approximately 65-68 miles per hour immediately prior to the collision.

Shortly after the van passed Mr. Smith's vehicle, Smith, Howard, and Franklin saw the rear of the van suddenly jump in the air, and then saw the van veer off into the median. All three witnesses testified that at the time of the collision they could not tell what the van had run into. In addition, all three testified that they did not see the tractor-trailer rig or its lights prior to the accident even though, in their opinion, they were in a position to have seen the tractor-trailer if it had had its lights on.

Prior to trial, the district court ruled that Alabama law would be applied to the negligence claim against Defendant Sumrall. Thus, the defendants asserted the affirmative defense of contributory negligence, which, if proven, provides a complete bar to the plaintiff's recovery under Alabama law.[2] The district court

---

[2]*See, e.g., Alabama Power Co. v. Scholz,* 283 Ala. 232, 215 So.2d 447, 452 (1968).

also ruled that Mississippi law would apply to the vicarious liability claim against Defendant Abston because the employment relationship between Sumrall and Abston was entered into in the State of Mississippi.

Also prior to trial, Defendant Abston moved for summary judgment, arguing that he could not be held vicariously liable for Sumrall's actions because the trip-lease and Federal Motor Carrier Safety Regulation 49 C.F.R. § 1057.12 provided that during the term of the lease, Mason was deemed to have exclusive possession, control, and use of the equipment, and in addition that there was no evidence that Abston retained sufficient control over Sumrall to render Abston liable under the doctrine of respondeat superior. The district court denied Abston's motion, holding that a genuine issue of material fact existed with regard to Abston's control over Sumrall.

The parties presented physical evidence, lay testimony, and expert testimony. At the close of all the evidence, the defendants moved for judgment as a matter of law under Rule 50(a) of the Federal Rules of Civil Procedure. The district judge denied this motion and submitted the matter to the jury by use of a special verdict form. The jury found that Sumrall had been negligent and that his negligence was a proximate cause of the collision. The jury also found that Peter Hiltgen had been negligent, but found that Hiltgen's negligence was not a proximate cause of the collision. In addition, the jury found that Abston was liable for

4

Sumrall's negligence.[3] Having found against all of the defendants, the jury then awarded the plaintiff $1,500,000.00.[4] The district court entered judgment on the jury verdict.

Following judgment, the defendants renewed their motions for judgment as a matter of law under Rule 50(b), and moved alternatively for a new trial under Rule 59 of the Federal Rules of Civil Procedure. Initially, the district court decided to grant the defendants' motion for a new trial on the grounds that the verdict was based in part on the incompetent testimony of plaintiff's expert witness. However, upon motion for reconsideration by the plaintiff, the court held that any error in admitting the testimony of the plaintiff's expert witness had been waived by the defendant's when they failed to raise a contemporaneous objection. Therefore, the court withdrew its order granting the defendants' motion for new trial. In addition, the district court was very clear that the defendants' renewed motions for judgment as a matter of law were denied.

After the court withdrew its order granting a new trial on the bases of erroneously admitted evidence, the court considered the defendants' motion for new trial based on the excessiveness of the

---

[3]Defendant Mason conceded prior to trial that it was responsible, by operation of the trip lease and federal regulations, for Sumrall's actions. Therefore, there was no separate instruction or finding of the jury regarding Mason's liability.

[4]Under Alabama law, the plaintiff in a wrongful death action may only recover punitive damages. *See, e.g., Tatum v. Schering Corp.,* 523 So.2d 1042, 1052-57 (Ala.1988). Having ruled that Alabama law applied, the district court appropriately instructed the jury on punitive damages.

5

jury's punitive damages award and request for remittitur. The court held a hearing to review the propriety of the award, as required by Alabama law,[5] and held that the amount awarded by the jury was not excessive.

On appeal, the defendants make the following arguments: 1) that the evidence is not legally sufficient to support the jury verdict and thus they are entitled to judgment as a matter of law; 2) that the jury's verdict is contrary to the great weight of the evidence and thus they are entitled to a new trial; 3) that improper jury instructions and reading of certain stipulations misled the jury and thus they are entitled to a new trial; and 4) that the jury's punitive damages award is excessive and thus they are entitled to a new trial on the damages issue or a remittitur of the jury's verdict. In addition, Defendant Abston argues that as a matter of law he is not vicariously liable for Sumrall's actions.

## SUFFICIENCY OF THE EVIDENCE

A motion for judgment as a matter of law (previously, motion for directed verdict or J.N.O.V.) in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. On review of the district court's denial of such a motion, the appellate court uses the same standard to review the verdict that the district court used in first passing on the motion. *Bridges v. Groendyke Transp., Inc.,* 553 F.2d 877 (5th Cir.1977). A jury verdict must be upheld unless "there is no

_____

[5]*Industrial Chem. & Fiberglass Corp. v. Chandler,* 547 So.2d 812, 839 (Ala.1988).

6

legally sufficient evidentiary basis for a reasonable jury to find"
as the jury did.  Fed.R.Civ.P. 50(a)(1).

This court has consistently applied this standard to show
appropriate deference for the jury's determination.

> A jury may draw reasonable inferences from the evidence, and
> those inferences may constitute sufficient proof to support a
> verdict.  On appeal we are bound to view the evidence and all
> reasonable inferences in the light most favorable to the
> jury's determination.  Even though we might have reached a
> different conclusion if we had been the trier of fact, we are
> not free to reweigh the evidence or to re-evaluate credibility
> of witnesses.  We must not substitute for the jury's
> reasonable factual inferences other inferences that we may
> regard as more reasonable.

*Rideau v. Parkem Indus. Services, Inc.*, 917 F.2d 892, 897 (5th
Cir.1990) (citations omitted).

The defendants address two distinct points, arguing that the
evidence is insufficient to support the jury verdict.  First, they
contend that the evidence does not support the jury's conclusion
that Sumrall was negligent.  The district court specifically
rejected this contention.[6]  We agree with the district court's
determination.

Specifically, the defendants argue that there was no evidence
that the tractor-trailer's lights were off at the time of the
collision.  However, in our opinion, the testimony of Franklin
Howard, Gordon Simpson, and Britt Smith provided ample evidence to
support a finding that the tractor-trailer's lights were off, and
thus that Sumrall was negligent in his operation of the rig.[7]  The

_____

[6]Federal District Court Record at Vol. 12, p. 1531 n. 3.

[7]Because we hold that the testimony of plaintiff's lay
witnesses provides sufficient evidence to support the jury's

7

defendants rely on Sumrall's testimony that he never turned the lights off. However, the jury was free to consider Sumrall's interest in the outcome of the litigation and his credibility generally, and we will not replace the jury's evaluation of the weight or credibility of witness testimony with our own.[8]

Second, the defendants argue that the evidence does not support the jury's conclusion that Peter Hiltgen's negligence was not a proximate cause of the collision. This issue was raised by the defendants' assertion of the defense of contributory negligence. Contributory negligence, under Alabama law, is a defense that is a complete bar to the plaintiff's recovery if proven. It is an affirmative defense on which the defendant bears the burden of proof. *Robertson v. Travelers Inn,* 613 So.2d 376, 379 (Ala.1993). In addition to the burden of showing that the plaintiff failed to use due care for his own safety, the defendants bore the burden of proving that such failure was a proximate cause of the injury. *American Furniture Galleries, Inc. v. McWane, Inc.,* 477 So.2d 369, 372 (Ala.1985).

The evidence shows that Hiltgen was operating his van with

_____

finding on this point, we find it unnecessary to address the basis of the testimony provided by plaintiff's expert witness. We note that the defendants do not argue on appeal that the testimony of plaintiff's expert was improperly admitted.

[8]The defendants also contend that the "negative" testimony of the plaintiff's witnesses should not be allowed to outweigh Sumrall's "positive" testimony to the contrary. Although the defendants have made a valiant effort to phrase this argument in the language of legal technicality, in essence it is no more than a request that we take the questions of weight and credibility away from the jury. We must deny this request for the reasons given above.

only one functional headlight. The evidence also allowed a finding that Hiltgen was driving too fast under the circumstances and that he was inattentive to the road in front of him at the time of the collision. Thus, the jury's conclusion that Peter Hiltgen was acting negligently at the time of the collision is supported by the evidence; but, as just explained, this finding establishes only one part of the affirmative defense of contributory negligence.

The defendants argue that the testimony of the plaintiff's expert regarding the effectiveness of the reflectors used on the rear of the tractor-trailer and the average time necessary for human reaction necessitates a finding that Peter Hiltgen's negligent inattentiveness was a proximate cause of the accident. Defense counsel have even provided us with mathematical calculations showing that the deceased had ample time to react and avoid, or at least mitigate, the fatal accident. However, even if we accept the accuracy of their calculations, it does not require the conclusion defendants propose.

The element of causation may be broken down into two parts: factual or "but-for" causation and legal or proximate causation. *Hilliard v. City of Huntsville Elec. Util. Bd.,* 599 So.2d 1108, 1111 (Ala.1992). Factual causation, or "but for" causation, asks whether the complained of injury or damage would have occurred but for the act or omission of the party in question. Proximate or legal causation asks whether the act or omission of that party is of such a nature that a court of law will recognize it as the legal cause of the injury. "In Alabama, the issue of proximate causation

9

hinges on foreseeability."  *Id.* at 1111-12 (quoting *Springer v. Jefferson County,* 595 So.2d 1381 (Ala.1992)).  At most, defendants' calculations could be said to establish factual or "but-for" causation, i.e. that the collision would not have occurred but for Hiltgen's inattentiveness.  Proximate or legal causation is not as easily demonstrated with scientific certainty and is most often a question for the jury.

We must be especially careful when reviewing a denial of a motion for judgment as a matter of law where the moving party has the burden of proof on the issue in question.[9]  We cannot say that the defendants presented such proof that a reasonable jury could only reach the conclusion that Peter Hiltgen's negligence was a proximate cause of the accident.  Therefore, we must hold that the jury's determinations regarding negligence and proximate causation are supported by legally sufficient evidence.

MOTION FOR NEW TRIAL

Our review of the district court's denial of a motion for new trial is more deferential than our review of a denial of a motion for a judgment as a matter of law.  "We will reverse the trial court's denial of a motion for new trial only when there is a clear showing of an abuse of discretion." *Dawsey v. Olin Corp.,* 782 F.2d 1254, 1261 (5th Cir.1986).

1. WEIGHT OF THE EVIDENCE

---

[9]*See Allen v. Seacoast Products, Inc.,* 623 F.2d 355, 360 n. 9 (5th Cir.1980);  Steven A. Childress & Martha S. Davis, *Federal Standards of Review* § 3.06, at 3-65 (2d ed. 1992);  9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2535, at 592-93 (1971).

10

Defendants argue that they are entitled to a new trial because the jury's verdict is contrary to the great weight of the evidence. To show an abuse of discretion, the defendants would have to be able to show "an absolute absence of evidence to support the jury's verdict." *Dawsey,* 782 F.2d at 1262 (quoting *Bailey v. Southern Pacific Transp. Co.,* 613 F.2d 1385, 1391 (5th Cir.) (per curiam) (quoting *Urti v. Transport Commercial Corp.,* 479 F.2d 766, 769 (5th Cir.1973)), *cert. den.,* 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980)). Since we have already held that the jury's verdict was supported by the evidence, we do not find an abuse of discretion.

2. ERROR OF THE TRIAL COURT

Defendants also argue that they are entitled to a new trial because certain instructions given to the jury and stipulated facts read to the jury may have led the jury to believe that it could find the Defendant Sumrall negligent on some unsupported general theory of negligence. We have reviewed the district court's charge to the jury and conclude that it accurately reflects applicable law. In addition, we do not believe that the order of the instructions created any risk of confusion. "Trial courts are accorded great latitude in shaping instructions, and a verdict based judgment will be reversed because of an erroneous instruction only when the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Mayo v. Borden, Inc.,* 784 F.2d 671, 672 (5th Cir.1986) (citations omitted). We have no such doubt in this case.

11

The defendants also cite the fact that the district court read stipulated facts contained in the pre-trial order to the jury at the beginning of the trial. To the extent that such stipulated facts were not relevant to the issues to be tried, their submission to the jury would seem to be contrary to Federal Rule of Evidence 402, which provides that "[e]vidence which is not relevant is not admissible." However, we do not believe that any of the stipulated facts created a substantial risk of confusion or prejudice. Therefore, we find that the district judge did not abuse his discretion in denying the defendants' motion for new trial on this basis.

3. EXCESSIVE DAMAGES/REMITTITUR

The defendants also contend that the jury's award of punitive damages is excessive and that they are entitled to a new trial on damages or a remittitur of the jury verdict. The district court properly instructed the jury on punitive damages, and the jury awarded the plaintiff $1,500,000.00. On defendants' motion for new trial or remittitur, the district court held a hearing to review the award for excessiveness and applied the factors provided by Alabama substantive law.[10] The district court fully considered the prescribed factors and held that the award was not excessive under Alabama law. The district court's decision in this regard is accorded considerable deference and should not be reversed absent an abuse of discretion. *Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.,* 492 U.S. 257, 279-80, 109 S.Ct. 2909, 2922,

---

[10]*See Green Oil Co. v. Hornsby,* 539 So.2d 218 (Ala.1989).

12

106 L.Ed.2d 219 (1989).  Applying this standard of review, we find no error.

### ABSTON'S VICARIOUS LIABILITY

In addition to the arguments applicable to both defendants, Defendant Abston contends that he cannot be held liable for Defendant Sumrall's actions.  This argument requires us to review both questions of law and findings of fact.

First, Abston argues that, as a matter of law, he cannot be held liable for Sumrall's actions under the doctrine of *respondeat superior* because federal regulations required Defendant Mason, as the lessee of the truck, to have "exclusive possession, control, and use" of the tractor-trailer provided by Abston.[11]  Indeed, the lease, and the controlling federal regulations, provide the basis for Defendant Mason's liability in the present case.  In *Simmons v. King,* this court recognized that the lessee's liability under such a lease[12] is not governed by the common law doctrine of *respondeat*

---

[11]The Federal Motor Carrier Leasing Regulations governed the lease entered into by Abston and Mason.  Section 1057.12 of those regulations states, in relevant part:

> (c) Exclusive possession and responsibilities—
>
> (1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

49 C.F.R. § 1057.12.

[12]In *Simmons,* as required by federal regulation, the lease provided

13

*superior.  Simmons,* 478 F.2d 857, 867 (5th Cir.1973).  Instead, the assumption of responsibility required by the federal regulations made the loaned driver the statutory employee of the lessee, and rendered the lessee vicariously liable as a matter of law.  *Id.*

We also held in *Simmons* that the legal responsibility of the lessee mandated by the federal regulations did not preclude the lessor's liability under common law standards of control.  *Id.*

> This is not as incongruous as might be supposed.  ICC can mandate a positive legal responsibility which we uphold in the only way it would be meaningful—to give protection to the injured member of the public[.]  At the same time [the lessor] has, or may have, a practical control over [the driver] of a kind which would allow it to obtain an automatic insulation from liability from the mere terms of a lease between two parties.

*Id.*  Therefore, to determine whether Defendant Abston may be held vicariously liable under the circumstances presented, we must first look to the applicable state law.

The district court held that Mississippi law would be applied to the determination of this issue and this ruling has not been appealed.  Although the Mississippi courts have used multi-factored tests to determine vicarious liability in different contexts, it also has held that the core issue is whether the employer had sufficient control that he ought to be held liable for the negligent acts of the "employee".  *See Fruchter v. Lynch Oil Co.,*

---

> It is understood that the leased equipment under this agreement is in the exclusive possession, control and use of the authorized carrier Lessee and that the Lessee assumes full responsibility in respect to the equipment it is operating, to the public, the shippers and the Interstate Commerce Commission.

*Simmons,* 478 F.2d at 862 n. 13.

14

522 So.2d 195, 198 (Miss.1988).

The Mississippi courts have not addressed the application of the doctrine of *respondeat superior* to a situation like this one where a trip-lease purports to vest exclusive control over the equipment in a third-party lessee. However, we have no reason to conclude that the Mississippi court would allow an employer to avoid vicarious liability by operation of such a contract while retaining *de facto* control of the employee. Therefore, we hold that under Mississippi law, an employer can be subject to vicarious liability based on a right or power to control an employee's actions despite the intervention of a written equipment lease that purports to vest exclusive control in a third-party lessee.

Since we find that the vicarious liability claim against Defendant Abston is not precluded by federal law or Mississippi state law, we must consider the relevant facts and review the district court's rulings on this issue. Abston testified that Sumrall was working for him and was loaned to Mason for the purpose of delivering specific cargo. Sumrall testified that he considered Abston his boss. After the accident, Sumrall telephoned Abston to report the accident and to obtain permission to complete the scheduled trip. In addition, it is clear that Sumrall's activity was in furtherance of Abston's business.

With these facts in mind, and in light of the law discussed above, we do not hesitate to affirm the district court's rulings. Clearly, these facts are sufficient to justify the district court's denial of Abston's motion for summary judgment. In other words, we

agree that there existed a genuine issue of material fact with regard to Abston's control of Sumrall. Likewise, we affirm the district court's denial of Abston's motion for judgment as a matter of law because the jury's finding with regard to Abston's liability is more than sufficiently supported by the evidence.

CONCLUSION

After carefully reviewing the alleged errors raised by the defendants, we are of the opinion that all of them are without merit. Accordingly, the judgment of the district court is AFFIRMED.

DeMOSS, Circuit Judge, dissenting:

I can think of nothing more "foreseeable" than the fact that if you drive with only one headlight working (which is negligence per se under Alabama Law) at 10:00 p.m. at a speed above the maximum speed limit, and are inattentive to the road in front of you, you may run into the rear of a slower moving vehicle. Since the jury found that Hiltgen's decedent was negligent in one or all of the assumed respects, I think we are quibbling over technicalities to try to distinguish between factual or legal causation. If the collision would not have occurred "but for" the negligence of Hiltgen's decedent, as the panel majority concedes, then in my view such negligence was certainly a cause of the collision; and the circumstances of foreseeability in this case are so clear that I would hold such cause to be a legal cause.

Every safe driving course taught in every high school and every defensive driving course given to adults instructs over and

16

over again that the greatest danger in driving at night is "overdriving your lights," i.e., driving at a speed which prevents you from stopping in the visible distance ahead. I would hold therefore, as a matter of law, that each driver on the federal interstate highway system owes a duty to all other drivers to drive at a speed which permits him to stop his vehicle in the visible distance ahead. Even plaintiff's expert in this case recognized this duty which arises out of the common sense recognition of the many occasions in which road conditions (ice, snow, pavement breakup repair work), slow moving traffic (farm tractors and equipment), wild animals (deer), road debris (lost loads), and vehicles damaged in prior collisions can create hazards which require a driver to be able to bring his vehicle to a safe stop or turn and avoid collision. Both of those curative actions are a function of response time; and response time is a function of visibility, and visibility is a function of lighting, and at night hazards may *not* always have lights on them. That such occasions may be "unexpected" does not make them "unforeseeable."

Furthermore, on a divided interstate freeway with two lanes for vehicles' proceeding in the same direction, the ability to change lanes quickly is a safety factor which permits faster moving traffic to avoid and pass slower moving traffic. Consequently, if one chooses to drive on our interstate freeways at or over the speed limit, the safer place to be is in the left hand lane because slower moving, entering traffic must enter the right lane from the right and departing traffic must slow down in the right lane to

17

exit on the right. Highway signs generally instruct slow moving traffic to use the right lane. The collision in this case occurred in the right hand lane, the lane in which entering traffic can be expected to be going at a slower rate than other traffic, and at a point approaching an exit off the freeway.

The test of whether negligence is a proximate (legal) cause of injury is a function of the scope of the duty, not whether the negligence in question is the act of the plaintiff or the defendant. If, for instance, in this case, the positions and activities of the two vehicles and the negligence of their drivers were exactly reversed, so that the truck, which is proceeding without one headlight at a speed above the maximum truck speed limit, collides with the rear-end of the Hiltgen automobile, which is proceeding at 30 miles per hour in the right lane with its lights off, would anyone seriously contend that a jury finding that the negligence of the truck driver was not a proximate cause of the collision was supportable under the facts? I think not. The jury just let their sympathies override their reason in answering the causation questions regarding the plaintiff's contributory negligence. That a contributory negligence holding would result in Hiltgen being unable to recover under the law of Alabama, may be an argument for comparative fault; but it is no justification for "hair splitting" over what is a legal cause and what is not a legal cause.

The only evidence upon which the jury could rationally have based its decision that Hiltgen's contributory negligence was *not*

18

a proximate cause of this accident was the testimony of plaintiff's expert, Langley. But the trial judge correctly characterized Langley's testimony as "unsupported and incompetent" and sufficiently prejudicial to entitle defendants to a new trial. Regrettably, the trial judge backed down on his initial determination to grant a new trial; and therein I think the trial judge erred. Simply because a timely objection was not made as to the admissibility of Langley's conclusions does not cure the inherent inaccuracy of such expert's testimony. You can't make a silk purse out of a sow's ear just by not objecting.

I think the jury's finding of "no proximate cause" as to the contributory negligence of Hiltgen is just plain "wrong and unjust" and I would REVERSE and REMAND for a new trial. *See King Coal Co. v. Garmon,* 388 So.2d 886 (Ala.1980).